RINDSKOPF, Appellant, vs. MYERS and another, Respondents.

71 639
77 650

*April 19 — May 12, 1888.*

*Debtor and creditor: Fraudulent conveyance: Evidence.*

1. The issue being whether the sales of certain goods to the plaintiff and to his vendor, N., were fraudulent as to the creditors of N. and his vendor, it was error to admit evidence of representations made by an agent of N.'s vendor to one of the defendants from whom he borrowed money in the name of such vendor, regarding the financial condition of his principal.

2. The plaintiff testified that he borrowed $2,000 from his brother L. to pay for the goods which the defendants claimed were transferred to him in fraud of creditors, and a deposition of L. to the same effect was read. The judgment rolls in certain actions against L. were then introduced by the defendants to show that L. was insolvent at the time of the alleged loan. L. was not asked whether these judgments had been paid or satisfied or to make any explanation in regard to them. *Held*, that it was error to admit such judgment rolls in evidence.

APPEAL from the Circuit Court for *Eau Claire* County. The action was brought by *Elias Rindskopf* against *Henry Myers*, the sheriff of Clark county, and *Richard Dewhurst*, for trespass in taking and carrying away a quantity of clothing of the value of $1,200, on the 2d of August, 1884. The facts will sufficiently appear from the opinion. The trial resulted in a verdict and judgment for the defendants. The plaintiff appealed.

*R. J. MacBride*, for the appellant.

*James O'Neill*, for the respondents.

COLE, C. J. We think there must be a new trial in this case because of the admission of incompetent testimony. A number of exceptions were taken to the rulings of the trial court in admitting or excluding testimony. We shall not notice all of these exceptions, but confine our attention to those taken to the admission of the statements or repre-

sentations made by the witness Stumes to *Dewhurst* as to the
financial condition of his father-in-law, E. M. Nathan, and
the admission of the judgment rolls against Louis Rinds-
kopf in favor of different parties.

The main issue in the case was as to the validity of the
sale made by Hyman Nathan to the plaintiff. The sheriff,
representing the creditors of Hyman Nathan and E. M.
Nathan, claimed that this transfer was fraudulent and void.
The sheriff justified seizing the goods in controversy (1)
under an attachment in favor of *Dewhurst* against E. M.
Nathan; (2) under an attachment in favor of the Neillsville
Bank against Hyman Nathan; and (3) by virtue of an exe-
cution on a judgment against Hyman Nathan, which judg-
ment was rendered more than twenty days after the taking
of the goods, and some time after this action was com-
menced. There was evidence which tended to prove that
E. M. Nathan, who originally owned the goods, or in whose
name the business was transacted, had sold them to the
vendor of the plaintiff in June, 1883, and that Hyman sold
them to the plaintiff on the 1st of August, 1884. An effort
was made to impeach the *bona fides* of these transfers.

It appears that E. M. Nathan resided in Milwaukee, and
the business at Neillsville was under the management of
one Stumes, as his agent or in some other capacity. Some
time in May or June, 1883, Stumes applied to *Dewhurst* for
a loan of $300. The loan was effected in the name of E. M.
Nathan; and *Dewhurst* was permitted to testify, against
the plaintiff's objection, that, at the time, Stumes repre-
sented his father-in-law, E. M. Nathan, was worth from
$12,000 to $20,000, and gave as a reason for wanting the
$300 that there were some store debts for merchandise
coming due, and that he did not then wish to call upon his
father-in-law for money, for reasons which he gave. It seems
to us too plain for argument that this evidence as to the
representations of Stumes had nothing to do with the case

on trial, and should have been excluded. It was calculated to mislead the jury from the real issue. That issue was, as we have said, whether the sale to the plaintiff was fraudulent as to the creditors of Hyman Nathan. The facts· about the loan, or the financial condition of E. M. Nathan, had no bearing whatever on that issue. It is attempted to justify the admission of this evidence on the ground that there was a scheme or conspiracy on the part of Stumes, E. M. and Hyman Nathan, the plaintiff, and his brother Louis Rindskopf, to defraud creditors; but the evidence entirely fails to sustain any such theory. There is really no evidence which tends to show that the plaintiff had anything to do with Stumes when he purchased, or that he then knew that E. M. Nathan ever owned the goods. The sale was made to the plaintiff by Hyman Nathan, who was in possession of the goods, claiming to own them, and who received the purchase price. The evidence is quite clear and satisfactory establishing these facts. If it conclusively appeared that Stumes was acting as the agent of E. M. Nathan in the management of the business in May or June, 1883, how could his representations as to the financial condition of his principal be pertinent evidence in this case? We confess we are unable to understand upon what rule they were admissible. It seems to us they were clearly incompetent, and should have been excluded. It is true, the defendants attacked the validity of the sale from E. M. Nathan to his son Hyman, as well as that from the latter to the plaintiff. But, still, we think the statements of Stumes were inadmissible for any purpose in the case.

Again, the plaintiff offered evidence tending to prove the consideration he paid for the goods. He was examined at considerable length on that point, and testified that he paid $2,500 in cash, and gave his note for $1,500. He was asked where and how he obtained the money to make the cash payment, and he said he borrowed $2,000 of his brother

Louis. The deposition of Louis was read, on the part of the plaintiff, to prove that he let the plaintiff have the $2,000, as had been testified to by the latter. On the part of the defendant, certain judgment rolls in causes against Louis Rindskopf were offered in evidence, under objection. The manifest object of this testimony was to disprove the fact that the plaintiff obtained the $2,000 from his brother, by showing that Louis was insolvent at the time. No question was asked the witness Louis whether these judgments had been paid or satisfied in any way, or to make any explanation in regard to them. Under the circumstances, it is obvious that the evidence was prejudicial to the plaintiff's case, and should not have been received. ·

The learned counsel for the defendants insists that all the facts and circumstances attending the transaction so clearly proved fraud in the transfer that the judgment should be affirmed upon the record, without regard to any technical errors which may have intervened on the trial. We do not feel justified in adopting that view. True, there are some suspicious or unusual circumstances attending the sale made to the plaintiff; but whether they are sufficient to show that the transfer was fraudulent was a question for the jury upon the evidence. The plaintiff was entitled to a fair trial of the question as to the validity of the sale, without any improper testimony being admitted to influence the minds of the jury against his claim. We think he has not had such a trial because of the errors in the proceedings which we have noticed; and therefore, without passing upon the other questions involved, we reverse the judgment and send the cause back for a new trial.

*By the Court.*— Ordered accordingly.